Jones, Judge,
delivered the opinion of the court:
The plaintiff instituted this suit to recover the increased costs incurred in fulfilling two contracts with the Government, alleging that these costs were the direct result of the enactment of the National Industrial Eecovery Act.
The action is brought under the Act of Congress approved June 25, 1938 (52 Stat. 1197), which confers jurisdiction upon the Court of Claims to hear, determine, and enter judgments against the United States upon the claims of contractors on contracts entered into before August 10,1933, and whose costs were increased as a result of the enactment of the National Industrial Eecovery Act. The Act provides that claims shall be allowed upon a fair and equitable basis and notwithstanding the bars or defenses of settlement or adjustment heretofore made.
Plaintiff was engaged in the business of purchasing old rags and discarded garments. These were purchased in large quantities from dealers. The rags were then washed and sterilized and after grading as to size, texture, and quality were sold as wiping cloths for machinery and utensils of various kinds.
On March 27, 1933, plaintiff entered into a contract (No. 30878) with the defendant to furnish to the Navy Department 700,000 pounds of cloths suitable for wiping machinery, delivery to be completed within approximately 75 days.
*717 May 9, 1933, plaintiff entered into another contract (No. 31313) to furnish 300,000 pounds of such cloths. These contracts will be referred to as Nos. 1 and 2, respectively.
The National Industrial Recovery Act was approved June 16, 1933. August 22, 1933, plaintiff signed the President’s Reemployment Agreement. February 17, 1934, the President approved the Code for Fair Competition for the Wiping Cloth Industry.
The claim for increased costs was for deliveries made during the period from August 31, 1933, to August 24, 1934.
After the passage of the National Industrial Recovery Act the plaintiff’s representative called on Mr. Van Patten, the Chief of the Bureau of Supplies of the Navy Department, and asked that plaintiff be released from the contracts, or that a higher price be allowed, stating that plaintiff would not be able to complete them on account of the increase in prices.
Mr. Van Patten told such representative that he had no authority either to cancel or to increase the price stipulated in the contracts, but suggested that plaintiff might be given a third contract at a higher price and with a longer period for delivery. Plaintiff and defendant entered into such a contract (No. 33384) hereinafter referred to as Contract No. 3, on October 10, 1933, but there is no claim for any increased costs in connection with the completion of such Contract No. 3.
The auditors of plaintiff and defendant differed in calculating the cost of material and labor shown by the books of the plaintiff as such books were interpreted by these respective auditors.
Finally plaintiff and defendant entered into a stipulation as to the method that should be used in arriving at labor costs, which was to divide the total pounds manufactured during any particular period into the total wages paid out during that period and thus to arrive at the average cost of labor per pound of manufactured production. It was agreed that the plaintiff’s auditor should furnish as a part of the record a supplemental audit showing the average labor costs' per pound, according to this method. *718 It was also agreed and stipulated that the plaintiff should submit a supplemental schedule showing the average cost per pound of the manufacturing expenses and thus show the total amount of the claim for increased labor costs and increased manufacturing costs. These were accordingly made up and filed separately for each contract covering the entire period of that part of the deliveries that form the basis of this claim.
It was also agreed and stipulated that defendant’s accountant would prepare a schedule showing the labor costs per pound — using the method agreed upon — for the period commencing with the month of August 1932 and continuing through the month of July 1933.
The schedule of labor costs as filed by defendant’s accountant shows that the average for April, May, and June of 1933 was no higher in plaintiff’s organization than the average for the three months immediately preceding that period. The plaintiff’s auditor filed no separate schedule of labor costs for this period.
The record and testimony do not justify a finding of recoverable increased costs in connection with the performance or carrying out of Contract No. 1.
Had plaintiff delivered the cloths provided in Contract No. 1 within the time contemplated, or within a reasonable time thereafter, there would have been no substantial increased cost, either upon the labor or material used by the plaintiff in fulfilling Contract No. 1.
Tire excuse offered for not complying with the contract within the time specified was the fact of the bank holiday. The so-called bank holiday began in the early part of March — several weeks before plaintiff entered into the contract. It was fully cognizant of the facts in connection with such holiday and had full knowledge of the conditions that prevailed at the time it entered into Contract No. 1 on March 27, 1933. We conclude, therefore, that defendant should not be held liable and made to pay damages in connection with the carrying out of the contract which was entered into with full knowledge of the facts, nor for the situation in which plaintiff found itself, and for which the defendant was not responsible.
*719 Plaintiff claims that when its representative had the conversation with Mr. Van Patten the, time of delivery was waived and a longer period allowed within which to deliver the remaining portion of the articles provided for in Contract No. 1. Plaintiff’s request, however, was that it be relieved from the remaining part of the contract by cancellation or that a higher price be allowed. The representative was told that this could not be done. It was suggested that the defendant might by tendering an additional or third contract at a higher price endeavor to help plaintiff with its difficulties. While in a sense by permitting the completion of Contract No. 1 the time of delivery was waived, we do not think that this necessarily carried with it an obligation to pay any and all increased costs which the delivery under the contract at a later period would occasion, especially since the time of delivery was unreasonably delayed, and the proof as to increased costs is not sufficiently definite.
The items of increased costs were for two deliveries under Contract No. 1, one on August 31, 1933, and the other on September 9, 1933.
In the peculiar facts and circumstances of this case these deliveries were delayed far beyond the date when it would be “fair and equitable” to permit recovery of increased costs by virtue of such deliveries.
The items of increased cost in connection with Contract No. 2 were for deliveries beginning September 25, 1933, and ending August 24,1934, as set out in Finding 10.
Defendant contends that these items should also be eliminated because of the fact that they were for shipments which were not made within 75 days from the time Contract No. 2 was entered into.
We think this contention is untenable for several reasons.
At the time Contract No. 2 was entered into on May 9, 1933, defendant’s representative had full knowledge of the fact that some delay was being had in connection with the completion of Contract No. 1.
The National Industrial Eecovery Act was approved only a little more than one month later, and long before the time specified for the completion of deliveries under Contract No. 2.
*720 Under Contract No. 2 delivery of a certain portion was to be had within 15 days after date of contract or bureau order [italics ours], and the remainder at the rate of 100,000 pounds every thirty days thereafter until completion of the contract.
In all the circumstances it is fair to construe this provision to the effect that the first delivery under Contract No. 2 was not necessarily to be made within 15 days from the date of the contract, but either from the date of the contract or the bureau order. The other deliveries were to be at intervals of 30 - days following either the date of the contract or the first bureau order.
The record does not show when the bureau order for the first delivery under Contract No. 2 was given.
Even if the contract should be construed as requiring the first delivery within 15 days after the date of the contract, the larger portion of the delivery under the contract would have been after the enactment of the National Industrial Recovery Act. Plaintiff, therefore, is entitled to recover whatever damages the evidence may show were caused by such Act.
Prior to April 6, 1934, plaintiff complied with neither the wages nor the hours provision of the President’s Reemployment Agreement; nor did it comply with the provisions of the Wiping Cloth Industry Code. While it made some adjustments in the hours of labor per week, it did not meet the requirements of the Agreement in this respect. During the entire period from August 25,1933, to April 6,1934, it averaged working more than 68% of its employees in excess of 40 hours per week. The proof of increased costs attributable to the National Industrial Recovery Act throughout this period is not satisfactory.
In the facts and circumstances of this case we find that it is not fair and equitable that plaintiff should recover any increased costs for this period.
After April 6, 1934, plaintiff complied substantially with both the wages and hours provisions of the Code and the Reemployment Agreement.
Pursuant to the stipulation agreed to by parties plaintiff and defendant before the Commissioner who heard the case *721 the plaintiff filed its schedule of labor costs covering the period of deliveries under the contract and in accordance with the formula agreed upon in such stipulation. It also included in its schedule the material costs and the cost of manufacture during the period covered by deliveries under Contract No. 2.
These items of increased cost for the period after April 6, 1934, are nowhere successfully contradicted. In fact, the formula agreed upon and the evidence of record both tend to establish these items of cost very clearly.
There was a reason for the formula agreed upon. In the millions of pounds of rags that were handled by the plaintiff regularly, which were made up of innumerable individual items of varying grades, qualities, sizes, and weights, it was impossible to separate the rags that were to be used in connection with the government contract from those that were to be used for filling, other contracts and for other purposes. The agreement, therefore, to divide the total pounds manufactured during any particular period into the total wages paid out during that period in arriving at the labor costs and using a somewhat similar method in arriving at the material costs was a fair method and was reasonably accurate.
For the foregoing reasons plaintiff is entitled to recover the sum of $1,270.12.
It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.
No. 44017.
June 2, 1941.

United States Quarry Tile Company.

The court made special findings of fact substantially as follows:
Plaintiff is a Delaware corporation engaged in the manufacture of floor and ceramic tile, with operating plants at Parkersburg, West Virginia, and East Sparta, Ohio, and *722 maintains its office at Canton, Qbio. The tile manufactured by the plaintiff company, excepting variations as to size, was a standard product.
Plaintiff, on the dates stated, entered into certain written contracts with the respective subcontractors named for the future delivery at certain fixed prices for the certain quantities and qualitites of tile as called for and required by the respective prime contracts between the defendant and the respective general contractors and by the respective subcontracts thereunder for the following federal buildings:
1. August 31, 1932, with F. E. Gates Marble & Tile Company, subcontractor; for the Department of Agriculture Extensible Building, Washington; Aronberg-Fried Company, Incorporated, New York, general contractor.
2. August 31, 1932, with F. E. Gates Marble & Tile. Company, subcontractor; for the Interstate Commerce Commission and Labor Department Building, Washington; James Stewart and Company, Incorporated, New York, general contractor.
3. April 4,1933, with the American Mosaic Company, subcontractor; for the Archives Building, Washington; George A. Fuller Company, Washington, general contractor.
4. February 7, 1933, with the National Mosaic Company, subcontractor; for the Central Heating Plant, Washington; Bust Engineering Company, Pittsburgh, general contractor.
5. January 5, 1933, with the Northern Illinois Terrazo & Tile Company, subcontractor; for the United States Post Office, Durham, North Carolina; Penker Construction Company, Cincinnati, general contractor.
6. March 30, 1933, with the Allentown Tile & Marble Co., subcontractor; for the Naval Hospital Buildings, Philadelphia ; John McShain, Philadelphia, general contractor.
It was found that with respect to each of the above contracts and subcontracts, plaintiff fulfilled the contract and delivered the material, which was used in the respective buildings named.
Prior to plaintiff being called on to manufacture and deliver the material covered by the said contracts, the National Industrial Becovery Act was enacted, June 16, 1933, *723 and pursuant to the terms of said act plaintiff on August 10, 1933, entered into an agreement with the President known as the “President’s Reemployment Agreement,” and on November 13, 1933, plaintiff became bound by the Code of Fair Competition for the floor and wall clay tile manufacturing industry, and on and after September 1, 1933, plaintiff complied with said Agreement and Code. Plaintiff shortened the weekly hours of its employees, increased their pay, and made certain adjustments, etc.
Of the increased costs incurred as a result of this compliance, it was found that the total increase in direct labor costs for work done in connection with the said federal buildings amounted to $6,590.61.
It was further found that the claims of the plaintiff and/or the general contractors had been properly filed with the respective departments, as required by law.
The court decided that the plaintiff was entitled to recover, in an opinion per curiam, as follows:
The facts in this case have been stipulated by the parties and they show that the increased costs of $6,590.61 incurred by plaintiff consisted of increased wages paid to employees in accordance with the President’s Reemployment Agreement which plaintiff signed on August 10, 1933. Judgment will therefore be entered in favor of plaintiff for this amount.
It is so ordered.
No. 44540.
June 2, 1941

American Black Granite Company.

The court made special findings of fact as follows:
1. Plaintiff is a Wisconsin corporation having its principal place of business in Ashland, Wisconsin.
2. May 5, 1933, the Treasury Department of the United States entered into Contract No. Tlsa-4337 with Frank Messer & Sons, Inc., for the construction of the Nashville, Tennessee, Post Office; on the same date Frank Messer & Sons, Inc., entered into a contract with plaintiff to furnish *724 granite for tbe exterior of such, post office. January 18, 1933, the Treasury Department of the United States entered into Contract No. Tlsa-3941 with Cook-Anderson Company for the construction of the Greenville, Pennsylvania, Post Office; on June 30, 1933, Cook-Anderson Company entered into a contract with plaintiff to furnish granite for the exterior of such post office. Plaintiff fully performed each of its contracts.
3. September 6, 1933, plaintiff signed the President’s Reemployment Agreement authorized by section 4 (a) of the National Industrial Recovery Act of June 16, 1933, and on September 7, 1933, plaintiff increased the wages of its employees.
4. Under the Act of June 16, 1934, plaintiff on Monday, December 17, 1934, submitted to the Treasury Department claims for increased costs arising out of the Nashville and Greenville- contracts. These claims were denied by the General Accounting Office.
5. Plaintiff’s increased costs resulting from the enactment of the National Industrial Recovery Act by reason of compliance with the President’s Reemployment Agreement on the Nashville and Greenville contracts were, respectively, $1,070.52 and $556.16, totaling $1,626.68.
The court decided that the plaintiff was entitled to recover, in an opinion fer curiam as follows:
The facts in this case are stipulated and show that plaintiff in the performance of its contracts with the defendant incurred inoreased expenses resulting from the enactment of the National Industrial Recovery Act by reason of its compliance with the provisions of the President’s Reemployment Agreement which it signed on September 6, 1933, and judgment for this increased expense of $1,626.68 will be entered. It is so ordered.